1  AARON M. CLEFTON (SBN 318680)
   CLEFTON DISABILITY LAW
2  1423 Broadway #1133
   Oakland, CA 94612
3  Telephone: 510/832-5001
   Facsimile: 510/832-4787
4  info@cleftonlaw.com

5  Attorneys for Plaintiff
   JERIN FENTON

6

7                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA

8

9  JERIN FENTON,                      Case No. 3:24-cv-4604-PHK
                                      Civil Rights
10         Plaintiff,

11    v.                             **COURT ENFORCEABLE
                                     SETTLEMENT AGREEMENT AND
11 EMPORIUM SF, LLC; DIVISADERO      [PROPOSED] ORDER FOR
12 HAYES, LLC,                       INJUNCTIVE RELIEF**

13         Defendants.               Action Filed: July 30, 2024

14

15

16

17         1.     Plaintiff JERIN FENTON filed a Complaint in this action on July 12, 2024, to

18  enforce provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§

19  12101 *et seq.*, and California civil rights laws and to obtain recovery of damages for

20  discriminatory experiences, denial of access, and denial of civil rights against Defendants

21  EMPORIUM SF, LLC; DIVISADERO HAYES, LLC. Plaintiff has alleged that Defendants

22  violated Title III of the ADA; Sections 51, 52, 54, 54.1, and 54.3 of the California Civil

23  Code; and Health and Safety Code §§ 19953 *et. seq.* by failing to provide full and equal

24  access to patrons of the Emporium Arcade Bar located at 616 Divisadero Street, San

25  Francisco, California.

26         2.     In order to avoid the costs, expense, and uncertainty of protracted litigation,

27  Plaintiff JERIN FENTON and Defendants EMPORIUM SF, LLC; DIVISADERO HAYES,

28  LLC (together sometimes the "Signing Parties") agree to entry of this Court Enforceable

1  Settlement Agreement and Order to resolve all claims regarding injunctive relief raised in the

2  Complaint without the need for protracted litigation.  Accordingly, the Signing Parties agree

3  to the entry of this Order without trial or further adjudication of any issues of fact or law

4  concerning Plaintiff's claims for relief.  The Signing Parties have reached a separate

5  settlement agreement regarding Plaintiff's claims for damages, attorneys' fees, and litigation

6  expenses, which agreement fully and finally resolves Plaintiff's claims for damages,

7  including attorneys' fees and litigation costs and expenses against Defendants.

8  **JURISDICTION:**

9      3.    The Signing Parties to this Court Enforceable Settlement Agreement and

10  Order agree that the Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1331

11  for alleged violations of the Americans with Disabilities Act of 1990, 42 U.S.C. sections

12  12101 *et seq.* and pursuant to supplemental jurisdiction for alleged violations of California

13  Civil Code sections 51, 54, and 54.1.

14      4.    In accordance with the provisions of 28 U.S.C. section 636(c) the Parties

15  voluntarily consent to have a United States magistrate judge conduct all proceedings.

16      WHEREFORE, the Signing Parties to this Court Enforceable Settlement Agreement

17  hereby agree and stipulate to the Court's entry of this Court Enforceable Settlement

18  Agreement and Order, which provide as follows:

19  **SETTLEMENT OF INJUNCTIVE RELIEF:**

20      5.    This Order shall be a full, complete, and final disposition and settlement of

21  Plaintiff's claims against Defendants for injunctive relief that have arisen out of the subject

22  Complaint.

23      6.    The Parties agree and stipulate that the corrective work will be performed in

24  compliance with the standards and specifications for disabled access as set forth in the

25  California Code of Regulations, Title 24-2, and Americans with Disabilities Act Standards

26  for Accessible Design, unless other standards are specifically agreed to in this Court

27  Enforceable Settlement Agreement and Order.

28      a.    **Physical and Policy Remedial Measures and Administrative:**

- 2 -

i. Defendants shall perform the following remedial work set forth in the report attached to this Court Enforceable Settlement Agreement as **Exhibit A**: (1) addition of Braille exit signs; (2) clear the lower bar on the ground floor; (3) alter the lower bar to increase the minimum depth, and move the brackets to avoid interfering with the minimum length; (4) add accessible tables throughout all levels of the facility; (5) alter the restrooms as follows: add Braille signage, adjust speed and effort of doors, fix tile at entry to restrooms, correct door to swing outwards, correct the distance of the sinks, remove the upper toilet paper dispenser, lower soap dispensers, add a self-closing device for the stall door, modify the toilet to move the flush valve to the outside of the toilet; (6) add handrails on each side of the ramp on the ground floor level of the building; and (7) adjust the slope leading up to the platform lift and alter the lift as recommended in the report.

ii. In addition to the items identified above, Defendants shall provide one fixed accessible table on the main floor of the Emporium Arcade Bar.

b. **Timing**: Defendants will complete remediation of each item above by April 1, 2025. If unforeseen difficulties prevent Defendants from completing any of the agreed-upon injunctive relief, Defendants or its counsel will notify Plaintiff's counsel in writing within seven (7) days of discovering the delay. Plaintiff will have thirty (30) days to investigate and meet and confer with Defendants, and to approve the delay by stipulation or otherwise respond to Defendants' notice. If the Parties cannot reach agreement regarding the delay within that time period, Plaintiff may seek enforcement by the Court. Plaintiff understands and agrees that the injunctive relief promised by Defendants in this Stipulation requires the approval and cooperation of

CESA AND [PROPOSED] ORDER
Case No. 3:24-cv-4604-PHK

1    third parties, such as local government permitting officials, and that

2    while Defendants will do everything in its power to facilitate the

3    promised remediation by the deadline specified above, there may be

4    unforeseen delays caused by third parties not under the control of

5    Defendants.

6    c.    **Enforcement:** If Defendants fail to pay damages and attorney fees

7    pursuant to the separate settlement agreement, or to provide injunctive

8    relief on the agreed upon timetable and/or fail to provide timely

9    written status notification, Plaintiff may file a motion with the Court to

10    obtain compliance. The Parties agree to Plaintiff's right to seek

11    additional attorney's fees for any compliance work necessitated by

12    Defendants' failure to keep this agreement.  If the Parties disagree

13    about the fees required for the compliance amount, the parties agree to

14    participate in a Magistrate Judge-conducted Settlement Conference for

15    the purposes of resolving the disputed fees.  If the Settlement

16    Conference fails to resolve the fee dispute, Plaintiff shall be entitled to

17    an order directing the Defendants to pay Plaintiff's reasonably

18    incurred fees for the enforcement.

19    **DAMAGES, ATTORNEYS' FEES, LITIGATION EXPENSES, AND COSTS:**

20    7.    The Parties have reached a separate settlement agreement regarding Plaintiff's

21    claims for damages, attorneys' fees, and litigation expenses, which agreement fully and

22    finally resolves Plaintiff's claims for damages, including attorneys' fees and litigation costs

23    and expenses against Defendants. The Parties request that the Court retain jurisdiction to

24    enforce that monetary settlement agreement.

25    **ENTIRE COURT ENFORCEABLE SETTLEMENT AGREEMENT AND ORDER:**

26    8.    This Court Enforceable Settlement Agreement and Order constitute the entire

27    agreement between the Signing Parties on the matters of injunctive relief, and no other

28    statement, promise, or agreement, either written or oral, made by any of the Signing Parties

- 4 -

1    or agents of any of the Signing Parties that is not contained in this written Court Enforceable

2    Settlement Agreement and Order, shall be enforceable regarding the matters of injunctive

3    relief described herein.

4    **MUTUAL RELEASE AND WAIVER OF CIVIL CODE SECTION 1542:**

5    9.    Each of the Signing Parties to this Court Enforceable Settlement Agreement

6    and Order understands and agrees that there is a risk and possibility that, subsequent to the

7    execution of this Court Enforceable Settlement Agreement and Order, any or all of them will

8    incur, suffer, or experience some further loss or damage with respect to the lawsuit that is

9    unknown or unanticipated at the time this Court Enforceable Settlement Agreement and

10   Order is signed. Except for all obligations required in this Court Enforceable Settlement

11   Agreement and Order, the Signing Parties intend that this Court Enforceable Settlement

12   Agreement and Order apply to all such further loss with respect to the lawsuit, except those

13   caused by the Signing Parties subsequent to the execution of this Court Enforceable

14   Settlement Agreement and Order. Therefore, except for all obligations required in this Court

15   Enforceable Settlement Agreement and Order, this Court Enforceable Settlement Agreement

16   and Order shall apply to and cover any and all claims, demands, actions, and causes of action

17   by the Signing Parties to this Court Enforceable Settlement Agreement with respect to the

18   lawsuit, whether the same are known, unknown, or hereafter discovered or ascertained, and

19   the provisions of Section 1542 of the California Civil Code are hereby expressly waived.

20   Section 1542 provides as follows:

21   **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT**

22   **KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF**

23   **KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR**

24   **OR RELEASED PARTY.**

25   10.    Except for all obligations required in this Court Enforceable Settlement

26   Agreement and Order each of the Signing Parties to this Court Enforceable Settlement

27   Agreement and Order, on behalf of each, their respective agents, representatives, predecessors,

28   successors, heirs, partners, and assigns, releases and forever discharges each other Party and all

- 5 -

officers, directors, shareholders, subsidiaries, joint venturers, stockholders, partners, parent

companies, employees, agents, attorneys, insurance carriers, heirs, predecessors, and

representatives of each other Party, from all claims, demands, actions, and causes of action of

whatever kind or nature, presently known or unknown, arising out of or in any way connected

with the lawsuit.

**TERM OF THE COURT ENFORCEABLE SETTLEMENT AGREEMENT AND ORDER:**

11.    This Court Enforceable Settlement Agreement and Order shall be in full force

and effect for a period of twelve (12) months after the date of entry of this Court Enforceable

Settlement Agreement and Order by the Court.

**SEVERABILITY:**

12.    If any term of this Court Enforceable Settlement Agreement and Order is

determined by any court to be unenforceable, the other terms of this Court Enforceable

Settlement Agreement and Order shall nonetheless remain in full force and effect.

**SIGNATORIES BIND SIGNING PARTIES:**

13.    Signatories on the behalf of the Signing Parties represent that they are

authorized to bind the Signing Parties to this Court Enforceable Settlement Agreement and

Order. This Court Enforceable Settlement Agreement and Order may be signed in

counterparts and a facsimile signature shall have the same force and effect as an original

signature.

**END OF PAGE.**
**SIGNATURES CONTINUE ON THE NEXT PAGE AND ORDER IS AT THE END OF THE DOCUMENT.**

CESA AND [PROPOSED] ORDER
Case No. 3:24-cv-4604-PHK

1  Dated: _12/10/2024_                      PLAINTIFF JERIN FENTON

2

3                                           JERIN FENTON

4

5  Dated: _12/10/2024_                      DEFENDANT EMPORIUM SF, LLC

6

7                                           By: _____
                                            Print name:  **DANIEL MARKS**
8                                           Title:       **MEMBER**

9  Dated: _December 10, 2024_               DEFENDANT DIVISADERO HAYES, LLC

10

11                                          By:_____
                                            Print name:  Micheal Klestoff
12                                          Title:       Member

13

14 Approved as to form:

15 Dated: _12/10/2024_                      CLEFTON DISABILITY LAW

16

17                                          By:  AARON M. CLEFTON, ESQ.
                                            Attorneys for Plaintiff
18                                           JERIN FENTON

19
   Dated: _12/10/2024_                      GORDON REES SCULLY MANSUKHANI, LLP
20

21

22                                          By MARIE TRIMBLE HOLVICK, Esq.
                                            Attorney for Defendant
23                                          EMPORIUM SF, LLC

24 Date: _December 10, 2024_                JOANNA KOZUBAL, ESQ.

25

26

27                                          By JOANNA KOZUBAL, Esq.
                                            Attorney for Defendant
28                                          DIVISADERO HAYES, LLC

**ORDER**

Pursuant to stipulation, and for good cause shown, IT IS SO ORDERED.

The Parties SHALL coordinate to file any further documents should any be required to close this case, either by dismissal or otherwise, consistent with their settlement agreement.

Dated: January 10, 2025

_____
Honorable Peter H. Kang
U.S. Magistrate Judge

# EXHIBIT A

**Miyaki Access Specialist**
**Mike Miyaki**
mikemiyaki@me.com

October 31, 2024

Marie Trimble Holvick
Gordon Rees Scully Mansukhani
Assistant Managing Partner
Northern California
Email: mholvick@grsm.com

Dear Ms. Holvick:

I reviewed the facility for compliance with the accessibility requirements of the California Building Code, Chapter 11B (public accommodations) and the federal ADA (Americans with Disabilities Act).

**Facility Background and Scope of Work**

The facility is an arcade and bar located in San Francisco, CA. The scope of this report is limited to the entry and interior public areas of the space.  There is no off-street parking provided.  The site inspection occurred on September 11, 2024.

**Overview of Disabled Access Requirements**

There are two primary requirements regarding accessibility. The State standard and the Federal standard.

The State standards are found in the California Building Code Title 24. In 1982, the California Building Code went into effect replacing the 1961 ANSI Standards. The State standards and the facilities obligation to comply are largely dependent on the original construction date and alteration history. When an alteration occurs, the area of alteration and a path of travel to the altered area must comply with the CBC edition in effect at that time. The path of travel includes a primary entry, toilet facilities and drinking fountains serving the altered area. The CBC is revised approximately every three years. The past three editions are the 2013, 2016 and 2019. The current edition is the 2022 CBC, which went into effect on January 1, 2023.

The Federal standards are found in the ADA. The ADA was signed into law in 1990 prohibiting discrimination against person with disabilities. The Department of Justice implements the regulations (Title III) and the US Access Board issues minimum guidelines for scoping and technical requirements of the ADA. The original 1991 ADAAG (Americans with Disabilities Act Accessibility Guidelines) were replaced by the 2010 ABA/ADA Guidelines on March 12, 2012.

The ADA covers new construction, alterations and existing facilities. New construction and alterations are governed by the guidelines in place at the time of construction (or alteration). Existing buildings or buildings built pre-1990 require removal of architectural barriers (28 C.F.R. Section 36.304), if "readily achievable". Readily achievable is defined as "easily accomplishable and able to be carried out without much difficulty or expense". Removal of barriers is an ongoing obligation and largely based on the resources of the entity.

**General Construction History**

The construction history of the facility plays a large role in determining the applicable accessibility standards that apply. As discussed above, new construction is guided by the guidelines or standards in place at the time of construction. Alterations are also guided by the guidelines in place at the time of alteration. In addition, a path of travel supporting the altered area must also comply with the guidelines in place at the time of alteration. If the building was built before the ADA was in effect and no alterations have occurred, it is guided by Section 36.304 Removal of Barriers (if readily achievable).

**Construction history of The Emporium:**

<u>**BUILDING PERMIT HISTORY**</u>
**616 DIVISADERO STREET**
**SAN FRANCISCO, CA 94117**

| <u>DATE</u> | <u>DESCRIPTION</u> | <u>AMOUNT</u> | <u>PERMIT NUMBER</u> |
|---|---|---|---|
| 05/22/08 | B, E/ ALTERATION REMOVAL OF EXISTING STAGE CONSTRUCTION OF NEW WALL | $125,000.00 | 200805222694 |
| 05/06/16 | B, E/ ALTERATION INSTALLATION OF FIRE SPRINKLER SYSTEM | $121,311.96 | 201605066783 |
| 06/17/16 | B, E/ ALTERATION REPLACE EXISTING MECH SYSTEM WITH HVAC | $30,000.00 | 201606170286 |

| 10/31/16 | B, E/ ALTERATION CHANGE OF OCCUPANCY & USE FROM CHURCH TO BAR & ARCADE | $120,000.00 | 201610311564 |
| 12/08/16 | B, E/ ALTERATION CORE AND SHELL IMPROVEMENTS TO CREATE LEVEL FLOOR AREAS IN AUDITORIUM 1ST FLOOR & BALCONY AREAS | $600,000.00 | 201612084523 |

The building was originally constructed pre-1990.  The permits above in red are triggering alterations that required the area of alteration and path of travel supporting the area of alteration to comply with the standards in place at that time. The remaining permits are non-triggering alterations that did not require additional access upgrades.


## Applicable Standards

The permit dated 05/22/08 was guided by the 2007 CBC and 1991 ADAAG.

The permits dated 10/31/16 and 12/08/16 were guided by the 2013 CBC and 2010 ADA Guidelines.

Unaltered areas of the building are guided by 28 CFR Part 36.304, Removal of Barriers. This section does not require an alteration trigger, but requires you remove barriers (generally defined as the ADAAG alteration standards), if "readily achievable". This is defined as "easily accomplishable and without much difficulty and cost". If subsequent information becomes available, the report will need to be revisited.

If subsequent permit history reveals alterations have taken place, the report conclusions may need to be re-visited.

**The Emporium SF: 616 Divisadero Street, San Francisco, CA**

**Inspected by a CASp**



**Path of Travel from the Public Way**

- The entry is directly adjacent to the city sidewalk – one path from the public way is provided. **No action required.**



Fig 1.1

## Entry

- There is a slope in the direction of travel at the entry area.  The exterior landing on the pull side of the entry doors has a slope up to 10%.  **San Francisco Building Department (SFDBI) allowed power door openers as equivalent facilitation to mitigate the slop (see documents at end of report).**







**Fig 1.1**

5

- A level landing on each side of the door with a slope of 2% or less is typically required. To mitigate the slope issue, a power door operator with a vertical actuation bar has been added to one set of doors. As mentioned above, SFDBI approved the power doors as equivalent facilitation. In addition, they approved placement of the actuation bars over a slope greater than 2% due to the historic entry, including the custom tile. **No action required.**





**Fig 1.2**

6

- A level landing on each side of the door with a slope of 2% or less is required. To mitigate the slope issue, a power door operator with a vertical actuation bar has been added to one set of doors. As mentioned above, SFDBI approved the power doors as equivalent facilitation. In addition, they approved placement of the actuation bars over a slope greater than 2% due to the historic entry, including the custom tile. **No action required.**







**Fig 1.3**

**Interior Entry Area**

- There are standard commercial walk-off mats at the entry.  Ensure the mats do not begin to roll or curl up.  **They should be replaced if the corners or edges do not lay flush on the floor.  The mats could be secured to the floor with two-sided commercial tape.**





**Fig 1.4**

- The exit doors do not have a tactile and Braille exit signs.  **Provide the required tactile and Braille exit sign at each exit. Locate on the wall adjacent the door on the right side, see red arrow.  The Braille must be a minimum of 48" minimum above the floor (see Fig A below for mounting detail).**



Fig 1.5



*11B-703.4.2 Location* - *Where a tactile sign is provided at a door, the sign shall be located alongside the door at the latch side. Where a tactile sign is provided at double doors with one active leaf, the sign shall be located on the inactive leaf. Where a tactile sign is provided at double doors with two active leafs, the sign shall be located to the right of the right-hand door. Where there is no wall space at the latch side of a single door or at the right side of double doors, signs shall be located on the nearest adjacent wall. Signs containing tactile characters shall be located so that a clear floor space of 18 inches (457 mm) minimum by 18 inches (457 mm) minimum, centered on the tactile characters, is provided beyond the arc of any door swing between the closed position and 45-degree open position. Where permanent identification signage is provided for rooms and spaces they shall be located on the approach side of the door as one enters the room or space. Signs that identify exits shall be located on the approach side of the door as one exits the room or space.*



**Fig A - Mounting Requirements**

| Measurement Range | Minimum in Inches Maximum in Inches |
|---|---|
| Dot base diameter | 0.059 (1.5 mm) to 0.063 (1.6 mm) |
| Distance between two dots in the same cell[1] | 0.100 (2.5 mm) |
| Distance between corresponding dots in adjacent cells[1] | 0.300 (7.6 mm) |
| Dot height | 0.025 (0.6 mm) to 0.037 (0.9 mm) |
| Distance between corresponding dots from one cell directly below[1] | 0.395 (10 mm) to 0.400 (10.2 mm) |
| 1. Measured center to center. | |



**Fig B - Braille Spacing Requirement**

**Ground Floor**

The ground floor of the facility has a bar, arcade games, seating areas and separate sex men's and women's restrooms.

- The ground floor has multiple arcade games, pool tables, air hockey, pinball machines and change machines.











Fig 1.6

- The ground floor has a large bar with a lower counter section. The lower section has 29-1/2" of knee clearance and 33-1/2" to the top (knee clearance 27" minimum and top 34" maximum above the floor required). **The top of the lower counter must be kept clear at all times – it may not be used as an employee station.**







**Fig 1.7**

- The lower counter section has a depth of 17" and a distance of 45" between the brackets. **Provide a minimum depth of 19" and a minimum length of 60" with no obstructions. See Fig C below for detail.**



14





**Fig 1.8**



**Fig C**

- There are fixed and free standing tables throughout the ground floor.  5% of each different type of seating space must be accessible.  **Provide 5% of seating spaces with knee and toe clearance illustrated in Fig D below.**









Fig 1.9









**Fig D**

## Restrooms

The ground floor restrooms are located to the right and left side upon entering the facility. The men's restroom is located to the left and the women's restroom is to the right.









Fig 2.1 – Men's Restroom





Fig 2.2 – Women's Restroom

**Men's Restroom**

- The wall sign with Braille is not provided. **Provide the wall sign with tactile characters and Braille. Mount on the latch side of the door a minimum of 48" above the floor. See previous Fig A for details.**



Fig 2.3



Fig E

- The effort to operate the restroom door is 10 lbs. and the door closes in 3 seconds. **Adjust and maintain door effort to 5 lbs. or less to operate and provide a closing speed a minimum of 5 seconds.**

- There is missing tile near the threshold.  **Fill in so there are no gaps greater than ½" wide.**



Fig 2.4

- The restroom door swings into the clear floor space of the lavatory.  The lavatory requires a 30" by 48" clear floor space free of the door swing.  **Provide a 48" deep clear floor space with forward approach to the lavatory, free of any door swing, see Fig F below for detail.  Note: reversing the door swing, if permitted by fire and exiting code, would mitigate the issue.**









Fig 2.5

***11B-603.2.3 Door swing.*** <u>Doors shall not swing into the clear floor space or clearance required for any fixture.</u> Doors to accessible water closet compartments shall be permitted to encroach into the turning space without limitation. Other than doors to accessible water closet compartments, a door, in any position, shall be permitted to encroach into the turning space by 12 inches (305 mm) maximum.

***11B-606.2 Clear floor space.*** *A clear floor space complying with Section 11B-305, positioned for a forward approach, and knee and toe clearance complying with Section 11B-306 shall be provided.*





**Fig F**

- The centerline of the right lavatory is 8" from the adjacent wall and the centerline of the left lavatory is 11" from the adjacent wall. **Provide at least one lavatory with the centerline 18" minimum from an adjacent wall or partition. See previous Fig F for details.**

*11B-606.6 Adjacent side wall or partition. Lavatories, when located adjacent to a side wall or partition, shall be a minimum of 18 inches (457 mm) to the centerline of the fixture.*



**Right Lavatory**



**Left Lavatory**

- The soap dispenser is mounted 46" above the floor. **Provide one of each type of dispenser no higher than 40" above the floor to the highest operable part.**



Fig 2.6 – Counter 33" high plus 13"



Fig G

27

- The path of travel to the accessible toilet stall is 44" wide (minimum 44" required). **No action required.**





Fig 2.7

- The lower urinal provided the required accessible height and approach. **No action required.**



Fig 2.8

- The accessible toilet stall door does not have a closing device. **Provide a self-closing device for the stall door.**



Fig 2.9

- The upper toilet tissue dispenser obstructs the use of the side grab bar. **Remove the upper toilet tissue dispenser and maintain 12" above the grab bars free of any obstructions.**



**Fig 3.1**

- The side grab bar extends 54" from the rear wall (minimum 54" required). **No action required.**





**Fig 3.2**

- The flush valve is located on the incorrect side of the toilet.  **Provide the flush valve on the wide/transfer side of the toilet.**



Fig 3.3

**Women's Restroom**

- The effort to operate the restroom door is 10 lbs. and the door closes in 3 seconds.  **Adjust and maintain door effort to 5 lbs. or less to operate and provide a closing speed a minimum of 5 seconds.**



Fig 3.4

- The soap and hand sanitizer dispenses are mounted 43" and 48" above the floor. **Provide one of each type of dispenser no higher than 40" above the floor to the highest operable part.**





Fig 3.5

- The accessible toilet stall door does not have a closing device. **Provide a self-closing device for the stall door.**



Fig 3.6

- The upper toilet tissue dispenser obstructs the use of the side grab bar. **Remove the upper toilet tissue dispenser and maintain 12" above the grab bars free of any obstructions.**



Fig 3.7

## Path of Travel and Lower Level

A ramp connects the ground floor with the lower level. This is the only non-stair path to the lower level. The previous use was a movie theater built in 1926. The path of travel was constructed over the existing raked theater floor and followed the general contours of the theater. The SFDBI recognized the challenges and site constraints and did not require a complete regrade of the existing theater floor.

- The path of travel leading to the ramp has a cross slope up to 8.7%. Accessible paths of travel have cross slopes of 2% or less. **See comments above, due to the existing site constraints, no action was required.**





Fig 3.8

- The ramp does not have a top landing, the slope is 8.7%. **See comments above, due to the existing site constraints, no action was required.**





**Fig 3.9**



**Fig H**

- The ramp slope in the direction of travel is up to 9.5%.  The maximum slope must not exceed 8.33%.  **See comments above, due to the existing site constraints, no action was required.**









**Fig 4.1**

- The ramp has an intermediate landing with a slope 2% or less. **No action required.**







**Fig 4.2**

- The next ramp run has a slope up to 9.7%. The maximum slope must not exceed 8.33%. **See comments above, due to the existing site constraints, no action was required.**









**Fig 4.3**

- The next ramp run has a cross slope up to 5.4%. The maximum cross slope must not exceed 2%. **See comments above, due to the existing site constraints, no action was required.**





**Fig 4.4**

- The ramp does not have handrails. **Provide handrails on each side of the ramp. Handrails must have top and bottom extensions.**



**Fig 4.5**





**Fig I**

- A platform lift is provided to access the stage area. The slope to enter the lift is 10%. **I recommend providing a slope of 5% or less as a transition into the lift.**







**Fig 5.6**

- A platform lift is provided to access the stage area. **The lift should have power assisted doors and not require any assistance to enter or exit.**

  ***11B-410.1 General.*** *Platform lifts shall comply with ASME A18.1. Platform lifts shall not be attendant-operated and shall provide unassisted entry and exit from the lift.*

  ***11B-410.6 Doors and gates.*** *Platform lifts shall have low-energy power-operated doors or gates complying with Section 11B-404.3. Doors shall remain open for 20 seconds minimum. End doors and gates shall provide a clear width 32 inches (813 mm) minimum. Side doors and gates shall provide a clear width 42 inches (1067 mm) minimum.*

- A platform lift does not have the restriction sign. **Provide the restriction sign as detailed below.**

  *11B-410.8 Restriction sign. A sign complying with Section 11B-703.5 shall be posted in a conspicuous place at each landing and within the platform enclosure stating "No Freight" and include the International Symbol of Accessibility complying with Section 11B-703.7.2.1.*



**Fig J**

42

**Path of Travel (to upper levels)**

The path of travel to the upper levels are stairways. There are multiple flights and landings to reach the upper level.















**Upper Level**







Stairs to Mezzanine





## Path of Travel - Upper Levels

The upper levels have arcade games, seating and bar areas. However, the upper levels do not have any unique features and there are no private rooms. All amenities on the upper levels can be duplicated on the ground floor. If a group has a party planned on the upper level, private areas can be roped off on the ground floor to provide equivalent facilitation.

The alteration work done in 2016 – change of occupancy and core and shell improvements – have a waiver for providing an accessible path to the upper levels. Specifically, a Technical Infeasibility Request was granted/approved by the Department of Building Inspection.

11. Detailed description of the technical infeasibility. (provide details, documents and drawings if required or requested by    staff)

2 MEZZ. AREAS ARE SEPERATE FROM ONE ~~AREA~~ ANOTHER; 2ND FLOOR
BALCONY CONSISTS OF 5 MULTIPLE LEVELS; NO FEASIBLE MEANS
TO PROVIDE ELEVATOR ACCESS TO THESE LEVELS DUE TO HISTORIC ELEMENTS

12. ☐   Compliance with the regulations will be provided to the maximum extent feasible; (give description) _____

COMPARABLE FACILITIES WILL BE PROVIDED ON THE
ACCESSIBLE 1ST FLOOR CONSISTING OF ACCESSIBLE RESTROOMS,
BAR, SEATING, & GAMES AREAS, & STAGE/PERFORMANCE

(For the re-use of this form.) I have verified that the above stated compliance is still in effect and is the maximum degree of compliance possible. Applicant initials _____ and date **3/9/17** .

---

FOR THE DEPARTMENT OF BUILDING INSPECTION STAFF USE ONLY

*This technical infeasibility request is:*
☒ APPROVED (FOR THIS PERMIT ONLY)     ☐ DENIED

Plans reviewed by (print name): _____ Stephen Kwok, DBI

Signature of the Plans Examiner: _____S. Kwok_____ Date: **MAR 09 2017**

**Approved** for the following reason(s): _____
_____
_____
_____
_____

**Denied** for the following reason(s): _____

APPROVED
Dept. of Building Insp.

MAR 15 2017

Tom C. Hui
*Signature of the Group Supervisor: TOM C. HUI, S.E.      Date: _____
DIRECTOR
DEPT. OF BUILDING INSPECTION
Approved for re-use     Supervisor initials _____ and Date _____ .

---

50

These excerpts were taken from the DBI Pre-Application Meeting Findings.  The findings were approved by the Department of Building Inspection, dated 07/07/17.  The findings showed an elevator was not required.  In addition, the slope at the entry doors could be mitigated with a power door opener.



15.   Given the difficulty to add an elevator to the balcony level and the building's consideration as an historic resource, would Sec. 11B 202.4 Exception(s) 2, 4, &/or 9 apply?

*Yes.  No elevator would be required.*

Jeffrey Ma , DBI                                    N/A
                                                   Micki Jones, SFFD

16.   Is an elevator required to serve the balcony area if a reasonable portion of all facilities proposed for the tenant improvements there were made available on the accessible ground floor as per Sec. 11B 206.2.3 Exception 1.2?

*No elevator is required.*

Jeffrey Ma , DBI                                    N/A
                                                   Micki Jones, SFFD

17.   If the existing non-conforming sloped entry way did not meet the full requirements of Sec. 11B 206.4 for Entrances, would any modification be required to be made for the entry?

*An automatic opening option would need to be provided at an entry door. No other modification to the slope would be required.*

Jeffrey Ma , DBI                                    N/A
                                                   Micki Jones, SFFD

18.  Would the existing raked [sloped] theater floor serve as an accessible route as per Sec 11B 401 to any new level area created over the existing sloped first floor area if the sloped floor did not have landings as per Sec. 11B 405.7?

Yes.

*Jeffrey [illegible], DBI*

N/A

*Micki Jones, SFFD*

## Summary on Upper Level Path of Travel

The SFDBI had granted a technical infeasibility waiver for an elevator, understanding it would be very difficult and the fact that historic elements of the building would be disrupted.  An elevator was not required.

The flights of stairs and multiple landings to get to the upper level make a stair lift also infeasible.  Stairlifts are typically used on a short flight of stairs, with only a bottom and top landing.

As equivalent facilitation, the elements on the upper levels can be provided on the accessible ground level.  For private parties, an area on the ground floor can be roped off.  There are no "private rooms" on the upper levels, a private room on the ground floor would not be required.

## This concludes our comments on the existing conditions.

**Disclosure**

This report is limited to the areas addressed above and is limited to the requirements of the state and federal accessibility standards. The report does not protect you from every possible violation of the standards, as there are many areas of the code open for interpretation.

The report focuses on the issues observed at the time of the inspection and does not protect you from future lawsuits. A party may disagree with the interpretations in the report, as compliance is often left up to the readily achievable standard in which many factors are involved. The readily achievable standard can by broad and often times unclear, many experts have their own interpretation of the standard. The report does not provide any legal advice, legal responsibilities or legal rights in any way.

We believe the opinions addressed in the report significantly provide guidance on both the state and federal standards. When the issues are corrected, it is our opinion the facility will be in a better compliance position and protect against future accessibility claims.

Yours truly,

Mike Miyaki, ICC, CASp

State of California Certified Access Specialist (CASp #622)
ICC Certified Accessibility Inspector/Plans Examiner #8210666